[Civ. No. 2358. Third Appellate District.—March 29, 1922.]

## P. L. YARBROUGH, Respondent, v. F. W. HERBERT, Appellant.

[1] ACCOUNTING—SALE OF LANDS — OFFSETS — FINDING—EVIDENCE.— In this action based upon the theory that defendant refused to account to plaintiff for one-third of the selling price of certain lands, the legal title to which was held by defendant for the mutual benefit of the plaintiff, the defendant, and a third party in equal shares, the finding against the plaintiff's indebtedness on account of certain items of an asserted counterclaim or offset is supported by the evidence.

APPEAL from a judgment of the Superior Court of Placer County. George L. Jones, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Charles A. Bliss and Harry J. Gray for Appellant.

John R. Connelly for Respondent.

BURNETT, J.—The action was based upon the theory that defendant refused to account to plaintiff for one-third of the selling price of certain lands in the state of North Dakota, the legal title to which was held by said defendant for "mutual benefit of the said plaintiff, P. L. Yarbrough, the said defendant, F. W. Herbert and the said C. D. Ackerman in equal shares." The trial court found the existence of a contract among these three according to the claim of respondent: "that the defendants sold said land for the sum of $5280; that the expenses of the sale and the money advanced by defendant was the sum of $559.88; that the defendant, after deducting the money advanced and the expenses of the sale of said land, had on the 1st day of May, 1918, the sum of $1573.37 in his possession belonging to the plaintiff," and rendered judgment for respondent for that amount.

It is not disputed that the evidence supports the finding that such contract was entered into and that the property was sold for said consideration, although some complaint is made of the action of the court in awarding a money judgment for the entire amount, since it appears that a part of the consideration in the hands of appellant is a note of the purchaser upon which is due about $700. But since the sale was made without any consultation with plaintiff and, thereafter, the defendant refused to render any account or to recognize the claim of respondent, it was just for the court to treat said note as cash. Besides, it is not questioned that the note is fully worth its face value, and there was no contention at the trial that any loss would be suffered by defendant if it were considered as money.

In fact, the only controversy of any moment at the trial or herein on appeal relates to certain items of an asserted counterclaim or offset on the part of defendant, as follows: $416 for taxes, which it is claimed that plaintiff promised to pay; $250 collected as rent from Buchold & Hanreich; the sum of $500 collected from one Shelly on a lease, and the sum of $50 collected for pasturage from one Fuller, together with interest on these items. They all

arose out of and were dependent upon the purchase of a certain tract of land near Lincoln, California, known as the Richard N. Fuller property. It is by virtue of his ownership of this land that appellant claims this credit against respondent. His title was based upon a deed dated August 24, 1917, but on September 28th, following, he deeded it to the Auburn Creek Farms Company, a corporation; and there is evidence in the record from which a rational inference may be drawn that, if any indebtedness existed in reference to said items, it was due to said corporation instead of to appellant.

[1] However, this feature may be disregarded, as the evidence amply supports the finding of the court, "that none of the allegations of defendant's pleading designated a cross-complaint are true, nor is it true that the plaintiff is indebted to the defendant for the sum of $1550 or any other sum or at all for money had and received by the plaintiff for the use and benefit of the defendant or for any purpose or manner or at all and the court finds in this connection that the plaintiff did not receive any money for the use, benefit or account of defendant or in any other manner or at all." In reference thereto it may be mentioned that on September 15, 1917, appellant leased said premises to respondent for the term of one year with the additional provision that, "in case first party [Herbert] decides to have land seeded the following year to crop, that second party [Yarbrough] shall have the refusal to seed same on the same terms as the first year as herein provided." This lease remained in force until February 9, 1918, at which time it was replaced by a lease to respondent from the said Auburn Creek Farms Company, in which lease was this recital: "Reference is hereby made to a certain other lease of even date herewith executed by said first party to Jerry F. Shelley of Roseville, California, and it is understood and agreed that the within contract is entered into as compensation to the said second party for services performed in handling the said described lands, by means of securing tenants for said first parties and other services performed in connection therewith."

As justly stated by respondent, each of the items claimed by appellant as credits, except the sum of $416 for taxes, arose under this lease, and, according to the view we must

take of the record, plaintiff was under no obligation to pay any of these several amounts to anyone whomsoever.

As to the taxes, we may state that an agreement existed between appellant and respondent whereby the former agreed to pay the latter a commission of five per cent for his services in the sale of said Fuller Ranch, and it is the contention of Herbert—and he so testified—that Yarbrough agreed to pay said taxes out of said commission. But respondent testified directly to the contrary, and the trial court undoubtedly believed him since it found in harmony with his testimony.

As to the item of $500, the testimony of plaintiff and Jerry F. Shelley was to the effect that said amount was paid to the former for his leasehold rights in said premises. The transaction took place on February 9, 1918, and no reason appears why plaintiff was not authorized to sell said interest or why he should account to anyone for the consideration.

In relation to the item of $50, it is sufficient to quote the following testimony of plaintiff:

"Q. With reference to the item of $50 claimed by Mr. Herbert to have been paid you by Mr. Fuller, I will ask you if you received the sum of $50 from Mr. Fuller. A. Richard Fuller, yes, sir.

"Q. When did you receive that? A. Soon after the first of January, 1918—some time in January I will say.

"Q. What was this for? A. I hired him pasture on the ranch in question for the month of January or until such time it got too muddy for the stock to run on.

"Q. You rented him this pasture? A. Yes. . . . and by authority of that lease [the Herbert lease] I was renting the pasture."

Mr. Fuller also testified: "Well, when I sold the ranch I had it put in the agreement that I should have pasturage on the place until January 1, 1918—after that I asked Mr. Yarbrough if I could not leave them there for a couple of weeks, for a while—and paid him after that."

The evidence is equally clear as to the item of $250. There was a written agreement between Yarbrough as one party and M. Hanreich and Fred Buchold as the other, for the planting of certain summer crops on a part of said land, and in pursuance of this agreement Hanreich and Buchold

deposited with Yarbrough the sum of $250 as a guarantee "that they would cultivate; farms and grow" said crops. It was further agreed that Yarbrough might use as much of this money as was necessary "in order to accomplish the growing and harvesting of said crops . . . and shall not be required to return to said farmers [Hanreich and Buchold] any part of the said $250 on deposit."

It might be that Hanreich and Buchold could question the right of respondent to withhold this $250, but that question is not involved here. As between plaintiff and defendant, there can be no doubt that the view of the trial court as to said amount must be upheld.

Of course, as far as the judgment of this court is concerned, it can be of no avail that there was some testimony opposed to what we have set out.

At most, the case is one of conflicting evidence, and the judgment is therefore affirmed.

Hart, J., and Finch, P. J., concurred.